FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 11, 2022

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RUEBEN S.,[1] <br><br>            Plaintiff, <br><br>    v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>            Defendant. | No.    4:21-cv-5052-EFS <br><br> **ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Rueben S. appeals the denial of disability benefits. Because the administrative law judge (ALJ) failed to provide specific reasons supported by substantial evidence for discounting medical opinions pertaining to Plaintiff's difficulties interacting with others and managing his behavior, the ALJ erred. This matter is remanded for further proceedings.

---

[1] To protect the privacy of each social-security plaintiff, the Court refers to them by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

## I. Five-Step Disability Determination

2

A five-step sequential evaluation process is used to determine whether an

3

adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in

4

substantial gainful activity.[3] If the claimant is engaged in substantial gainful

5

activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

6

Step two assesses whether the claimant has a medically severe impairment

7

or combination of impairments that significantly limit the claimant's physical or

8

mental ability to do basic work activities.[6] If the claimant does not, benefits are

9

denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

10

Step three compares the claimant's impairment or combination of

11

impairments to several recognized by the Commissioner as so severe as to preclude

12

substantial gainful activity.[9] If an impairment or combination of impairments

13

14

15

[2] 20 C.F.R. § 416.920(a).

16

[3] *Id.* § 416.920(a)(4)(i).

17

[4] *Id.* § 416.920(b).

18

[5] *Id.*

19

[6] *Id.* § 416.920(a)(4)(ii).

20

[7] *Id.* § 416.920(c).

21

[8] *Id.*

22

[9] *Id.* § 416.920(a)(4)(iii).

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

If there is medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability.[17] Social Security claimants may not receive benefits if the remaining limitations without drug or alcohol use would not be disabling.[18]

## II.    Factual and Procedural Summary

Plaintiff filed a Title 16 application, alleging that his claimed disability began in 2015.[19] After his application was denied initially and on reconsideration, a telephonic administrative hearing was held before ALJ Jesse Shumway, who issued a decision denying Plaintiff's disability application.[20] Plaintiff appealed the denial to the district court, which subsequently determined that the ALJ erred at step two and remanded the matter for more proceedings.[21]

Plaintiff filed a subsequent application for Title 16 benefits in May 2019; Plaintiff's claims were consolidated.[22] In January 2021, a new telephonic

---

[17] 20 C.F.R. § 416.935(a).

[18] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[19] AR 206–14.

[20] AR 12–65.

[21] AR 541–64.

[22] AR 726–34.

administrative hearing was held before ALJ Shumway.[23] After the hearing, the ALJ again denied Plaintiff's disability claim. Specifically, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 27, 2015, the initial disability application filing date.

- Step two: Plaintiff had the following medically determinable severe impairments: left ankle fracture (status-post surgery on April 29, 2016), obesity, personality disorder, depressive disorder, anxiety disorder, and polysubstance use disorders.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

  > he can stand and walk for four hours total in combination in an eight-hour workday; he can occasionally crouch and climb ramps, stairs, ladders, ropes, and scaffolds; he cannot have concentrated exposure to extreme cold or heat, humidity, vibration, pulmonary irritants, or hazards (e.g., unprotected heights, moving mechanical parts); he is limited to simple, routine tasks; he needs a routine, predictable work environment with no more than occasional changes; he can have no contact with the public, and only occasional, superficial contact with supervisors and coworkers, with no collaborative tasks.[24]

---

[23] AR 505–28.

[24] AR 485.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as assembler production, agriculture produce sorter, and document preparer.[25]

When assessing the opinion evidence, the ALJ gave:

- great weight to the examining physical-health opinion of James Opara, M.D., and the reviewing physical-health opinion of Gordon Hale, M.D.

- great weight to the reviewing mental-health opinion of Carla van Dam, Ph.D.

- significant weight to the reviewing mental-health opinions of Jon Anderson, Ph.D., and Jan Lewis, Ph.D.

- some weight to the reviewing physical-health opinions of Robert Hander, M.D., and Norman Staley, M.D.

- some weight to the treating mental-health opinion of Tana Bentley, M.S.W., L.I.C.S.W, the reviewing mental-health opinion of John

---

[25] AR 476–504.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

Robinson, Ph.D., and the examining mental-health opinions of Kirsten

Nestler, M.D., and Cecilia Cooper, Ph.D.[26]

The ALJ also found Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but his statements

concerning the intensity, persistence, and limiting effects of those symptoms were

inconsistent with the medical evidence and other evidence.[27]

Plaintiff timely appealed to this Court.[28]

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[29] The

Commissioner's decision is set aside "only if it is not supported by substantial

evidence or is based on legal error."[30] Substantial evidence is "more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."[31] Moreover, because it is

---

[26] AR  487–95. The ALJ mentioned that Dr. Robinson was no longer considered a

medical source and therefore his opinion was treated as a lay-witness opinion.

Neither party challenged this finding.

[27] AR 488–95.

[28] *See* 20 C.F.R. § 422.201.

[29] 42 U.S.C. § 405(g).

[30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[31] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[32] The Court considers the entire record.[33]

Further, the Court may not reverse an ALJ decision due to a harmless error.[34] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[35]

## IV.    Analysis

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred when weighing the mental-health opinions from Dr. Nestler, Dr. Cooper, and Ms. Bentley. The ALJ did err. The ALJ's weighing of these medical opinions was not supported by substantial evidence or meaningful explanation.

---

[32] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[33] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[34] *Molina*, 674 F.3d at 1111.

[35] *Id.* at 1115 (cleaned up).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 1.    Standard

When Plaintiff filed his initial disability application, medical opinions were to be assessed based on the nature of the medical relationship the claimant had with the medical provider. When a treating physician's or evaluating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[37] may be rejected for specific and germane reasons supported by substantial evidence.[38]

### 2.    Dr. Nestler

In February 2016, Dr. Nestler evaluated Plaintiff and diagnosed Plaintiff with unspecified personality disorder, alcohol use disorder (severe in early remission per Plaintiff's report), unspecified depressive disorder, and stimulant use

---

[36] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

[37] *See* 20 C.F.R. § 404.1502 (defining who is an acceptable medical source for claims filed before March 27, 2017).

[38] *Molina*, 674 F.3d at 1111. The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

disorder (methamphetamines, in sustained remission per Plaintiff's report).[39]
Dr. Nestler opined that Plaintiff would have difficulty accepting instruction from
supervisors, interacting with coworkers and the public, performing work activities
on a consistent basis without special or additional instructions, maintaining
regular attendance in the workplace, completing a normal workday/workweek
without interruptions, and dealing with the usual stress encountered in the
workplace.

Dr. Nestler's opinion about Plaintiff's difficulty maintaining regular
attendance in the workplace and completing a normal workday and workweek
without interruptions was contradicted by Dr. Anderson's reviewing opinion that
Plaintiff could complete a normal workday and workweek given regular breaks if
sober. Because Dr. Nestler's opinion was contradicted, the ALJ was required to
provide specific and legitimate reasons supported by substantial evidence for
giving "some weight" to Dr. Nestler's opinion.[40]

The ALJ stated that he discounted Dr. Nestler's opinion because she "failed
to provide any quantification at all for most of the limitations assessed."[41] And the

---

[39] AR 332–37.

[40] *See Lester*, 81 F.3d at 830.

[41] AR 490.

ALJ "attempted to translate the intent into more vocationally concrete terms that are meaningful to the vocational expert in the residual functional capacity."[42]

An ALJ may discount an opinion due to vagueness if the opinion is not supported by examination findings.[43]  However, if the opinion is supported by examination findings, then the ALJ has a duty to develop the record to clarify any consequential ambiguities either contained in or caused by the opinion before discounting it for vagueness.[44]

Here, Dr. Nestler did not quantify how many absences from work Plaintiff would have monthly or how many minutes or hours Plaintiff would be interrupted

---

[42] AR 490.

[43] *See Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999) (determining that the doctor's opinion that the claimant would have "some" diminution in her concentration skills was conclusory and was not supported by relevant medical documentation); *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995) (determining that the doctor's conclusory opinion was not substantiated by relevant medical evidence).

[44] 20 C.F.R. § 404.1512.(e); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

from the normal workday or workweek. But Dr. Nestler did opine, based on her examination of Plaintiff and review of the records, that Plaintiff would have difficulties with attendance, persisting, and dealing with workplace stress. Dr. Nestler wrote that Plaintiff's ability to handle the "usual stress encountered in the workplace" was impacted by his personality disorder and depression:

> [Plaintiff's] interpersonal interactions throughout the interview today displayed overall poor interpersonal skills and he has persistent negative attitudes about others, the world and himself. He also has a long pattern of unstable relationships both in his personal life and his work life and has never worked at one place for very long. This is likely mainly due to his underlying personality disorder but may also have been in part due to his history of substance abuse. He also appears to have persistent antisocial traits.

Dr. Nestler's opinion were supported by both her observations and interactions with Plaintiff as well as his history.

While the RFC addressed several of Dr. Nestler's opined limitations, particularly her opinion that Plaintiff would have difficulty accepting instructions from supervisors, interacting with coworkers and the public, and dealing with some stresses in the workplace, the ALJ failed to meaningfully explain why these social limitations adequately incorporated Dr. Nestler's opined limitations about Plaintiff's difficulty maintaining regular attendance and persistence due to his personality disorder and depression.

Because Dr. Nestler's opinion is supported by examination findings and the longitudinal record, the ALJ erred by discounting Dr. Nestler's opinion on the basis of vagueness without first trying to develop the record by seeking a "quantified" opinion from Dr. Nestler about Plaintiff's absenteeism and off-taskness. This error

is consequential. The vocational expert testified that an individual who has approximately one monthly work absence, is off task in excess of 15 percent, or walks away from their workstation more than once a month cannot maintain gainful employment.[45]

    3.   <u>Dr. Cooper</u>

In January 2020, Dr. Cooper conducted a psychological evaluation of Plaintiff, which included reviewing reports from Lourdes Counseling Center and interviewing and testing Plaintiff.[46] Dr. Cooper diagnosed Plaintiff with alcohol use disorder, alcohol-related depressive disorder with anxiety, avoidant personality disorder, and antisocial personality disorder. Dr Cooper opined that Plaintiff could understand multi-step instructions, maintain attention and concentration for extended periods of time if he was comfortable with the site and the tasks involved, manage change if he benefited from it, and usually respond appropriately to normal hazards. Dr. Cooper also opined that "the quality of [Plaintiff's] relationships with supervisors and other persons in work-like settings would be adequate at first, but it is apt to deteriorate quickly because of mental health and physical health issues."[47] Dr. Cooper opined that Plaintiff's prognosis was poor because of his continued use of alcohol.

---

[45] AR 525–26.

[46] AR 955–66.

[47] AR 964.

Dr. Cooper's opinion was contradicted by Dr. Anderson's reviewing opinion that Plaintiff could accept instructions and respond appropriately to criticism from supervisors. Therefore, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence for giving "some weight" to Dr. Cooper's opinion.

The ALJ discounted Dr. Cooper's opinion because it was "too vague and unquantified to be particularly useful;"[48] though the ALJ mentioned that he attempted to incorporate Dr. Cooper's intent as to her opined vocational limitations into the RFC.

Although Dr. Cooper did not *detail* how or when Plaintiff's interactions would deteriorate with supervisors and coworkers, Dr. Cooper identified that Plaintiff's avoidant personality disorder and antisocial personality disorder resulted in Plaintiff having discomfort at worksites and school settings, having feelings of inadequacy, having lack of remorse, being sensitive to rejection, being irritable and irresponsible, being unwilling to be involved with people unless certain of being liked, and being arrested.[49] These identified personal and interpersonal challenges provide support for Dr. Cooper's opinion that Plaintiff's interactions with supervisors and coworkers would deteriorate. Moreover, Dr. Cooper noted the record reflects that Plaintiff has difficulties interacting with family, police officers, crisis support personnel, and employers. If the ALJ was

---

[48] AR 493.

[49] AR 964.

uncertain as to the vocational impact of Dr. Cooper's opined limitation, which was supported by record evidence and largely consistent with Dr. Nestler's opined limitations, the ALJ had a duty to seek clarification from Dr. Cooper before discounting them on the basis of vagueness.

While the ALJ mentioned that he incorporated the intent of Dr. Cooper's opinion into the RFC by limiting Plaintiff's contact with the public, supervisors, and coworkers, it is uncertain whether such a limitation sufficiently incorporated Dr. Cooper's opinion that Plaintiff's relationship with supervisors and coworkers would deteriorate quickly. The vocational expert testified that, if an individual has a verbal altercation with a supervisor or coworker and/or gets upset and walks away from their workstation more than once a month, he cannot sustain competitive employment.[50]

The ALJ's failure to seek clarification before discounting Dr. Cooper's opinion on vagueness grounds was consequential.

4.    Ms. Bentley

Ms. Bentley served as Plaintiff's counselor for several months in 2020.[51] In December 2020, she completed a questionnaire about Plaintiff's mental residual functional capacity.[52] Ms. Bentley opined that Plaintiff was moderately limited in

---

[50] AR 525–26.

[51] AR 2203–57.

[52] AR 2479–82.

his abilities to maintain regular attendance, be punctual within customary tolerances, and understand and remember detailed instructions and perform activities within a schedule, and markedly limited in his ability to carry out detailed instructions. She also opined that, under the "C" Criteria of Mental Listings, Plaintiff has a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."[53] Ms. Bentley wrote that she "can only speak to [her] experiences with [Plaintiff] in the context of therapy sessions" and therefore she did not answer several of the questions on the form because she did not have "observational experience in these areas."[54]

The ALJ gave "some weight" to Ms. Bentley's opinion because 1) "although it was a checkbox form with little explanation for the ratings, the ratings were generally consistent with the longitudinal record," 2) the opined moderate limitation in the ability to maintain attendance and perform within a schedule was vague, 3) the form defined "marginal adjustment" different from the listings, and 4) it was internally inconsistent, as the C Criteria marginal-adjustment finding differed from the finding that Plaintiff only had a mild limitation in his ability to adapt and manage himself.

---

[53] AR 2481.

[54] AR 2482.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

As to the first and second reasons, an ALJ may permissibly reject an opinion, such as a check-box opinion, that does not offer any explanation for its limitations.[55] However, if treatment notes are consistent with the opinion, a check-box opinion may not automatically be rejected.[56] Here, the ALJ found that Ms. Bentley's opined check-box limitations were "generally consistent with the longitudinal record."[57] Consistent with Ms. Bentley's opinion that Plaintiff was markedly limited in his ability to carry out detailed instructions, the ALJ crafted an RFC that limited Plaintiff to simple, routine tasks. The ALJ then proceeded to find that Ms. Bentley's opined moderate limitation relating to Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was "vague."[58]

The ALJ did not discuss whether Ms. Bentley's opined limitation was supported by the counseling treatment notes. The counseling notes reflect that Plaintiff did not show for some sessions, needed to reschedule other sessions, had

---

[55] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory and inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[56] *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

[57] AR 493–94.

[58] AR 494.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

difficulty maintaining sobriety, and dealt with anxiety poorly. The counseling notes also reflect that the treatment plan objectives were to help Plaintiff think before acting/speaking and learn coping skills to manage anxiety symptoms and depression triggers.

These counseling notes appear to support Ms. Bentley's opined limitations. Therefore, if the ALJ deemed Ms. Bentley's opinion about Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual vague, the ALJ was to contact Ms. Bentley and seek clarification as to how the opinions translated into vocational limitations before discounting these opinions for vagueness.

Third, the ALJ discounted Ms. Bentley's opinion because the form defined "marginal adjustment" different from the listings. The question on the form Ms. Bentley completed and to which she answered "yes" was, "[d]oes your patient have a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."[59] In comparison, "marginal adjustment" for purposes of the listings' Paragraph C criteria means:

> that your adaptation to the requirements of daily life is fragile; that is you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to

---

[59] AR 2481.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

exacerbation of your symptoms and signs and to deterioration in your functioning.[60]

The ALJ fails to meaningfully explain how the different language used on the form and in Paragraph C is a basis to discount Ms. Bentley's opinion that Plaintiff would decompensate with a *minimal* increase in mental demands or change in environment. Such an opinion is related to Plaintiff's ability to sustain work. By not considering how this opined limitation affected Plaintiff's ability to sustain work solely because the opined limitation was worded differently than the Paragraph C criteria, the ALJ erred.

Finally, the ALJ discounted Ms. Bentley's opinion because it was internally inconsistent. The ALJ found that Ms. Bentley's C Criteria marginal-adjustment finding was inconsistent with her other finding that Plaintiff only had a mild limitation in his ability to adapt and manage himself. These opined limitations do appear inconsistent with each other, because if Plaintiff is likely to decompensate with a minimal increase in mental demands or change in environment, it would be expected that he would have more than a mild limitation in regard to adapting or managing himself, i.e., regulating emotions, controlling behavior, and maintaining well-being in a work setting. This was a germane reason to discount these two aspects of Ms. Bentley's opinion. However, without additional explanation by the ALJ, this did not serve as a basis to discount Ms. Bentley's additional opined limitation that Plaintiff would have a moderate difficulty performing activities

---

[60] Pt. 404, Subpt. P, App. 1, Listing 12.00.G.2.c.

1    within a schedule, maintain regular attendance, and being punctual within

2    customary tolerances.

3        If the ALJ discounts Ms. Bentley's opinion on remand, he must provide more

4    meaningful analysis supported by substantial evidence.

5    **B.    Symptom Reports: the ALJ must reevaluate on remand.**

6        Plaintiff argues the ALJ failed to provide valid reasons for discounting his

7    symptom reports. As the ALJ did not find Plaintiff was malingering, the ALJ was

8    required to consider all of the evidence and provide "specific, clear and convincing"

9    reasons supported by substantial evidence for rejecting Plaintiff's symptom

10   reports.[61]

11

12

13   _____

14   [61] Factors to be considered in evaluating the intensity, persistence, and limiting

15   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

16   duration, frequency, and intensity of pain or other symptoms; 3) factors that

17   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

18   side effects of any medication the claimant takes or has taken to alleviate pain or

19   other symptoms; 5) treatment, other than medication, the claimant receives or has

20   received for relief of pain or other symptoms; 6) any non-treatment measures the

21   claimant uses or has used to relieve pain or other symptoms; and 7) any other

22   factors concerning the claimant's functional limitations and restrictions due to pain

23   or other symptoms. SSR 16-3p, 2016 WL 1119029, at *2, 7; 20 C.F.R. § 416.929(c);

In addition to his physical-symptom complaints, Plaintiff testified that he has difficulty concentrating, getting along with authority figures, finishing what he starts, and following instructions; has memory loss; is socially isolated and does not have friends; has panic attacks in social settings; gets frustrated easily; drinks when he gets mad (which then exacerbates his anger); and isolates when he gets frustrated, which is about three or four times a week.[62] Plaintiff also testified that after the ALJ's first denial in April 2018 he attempted to work but his attempts were unsuccessful because of his negative interactions with supervisors.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his mental impairments inconsistent with his minimal mental health treatment, minimal objective findings, high functioning, and pattern of work activity.[63] As this matter is being remanded due to the ALJ's consequential errors when evaluating the medical opinions, the ALJ is to also reevaluate Plaintiff's mental-health symptom reports.

_____

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[62] AR 35–51, 509–20.

[63] AR 488–493.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

First, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[64] The ALJ must more meaningfully explain why Plaintiff's minimal mental health treatment undermines his allegations of disabling mental symptoms, which largely pertain to isolating, frustration with others, and anxiety.

Second, the ALJ must consider the extent of improvement Plaintiff obtained with mental-health treatment and whether treatment so improved Plaintiff's mental health that his "impairments no longer seriously affect [his] ability to function in a workplace."[65] Reports of improvement in mental health "must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms," as well as with an awareness that "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."[66]

Third, the ALJ must provide evidentiary support for his finding that "psychological status in physical treatment notes are particularly useful because they provide insight into the level of severity of the psychological pathology . . . [T]he absence of any psychological abnormality in primary care provider exams

---

[64] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209-1300 (9th Cir. 1999).

[65] *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

[66] *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (cleaned up).

suggests any mental health deficits are fairly subtle. . . ."[67] The ALJ did not cite to any authority or medical evidence to support this assessment. On remand, if the ALJ makes such an assessment about the strength of psychological status findings in physical treatment notes, the ALJ must cite authority for such a proposition or obtain testimony from a psychological expert supporting this assessment.[68]

Fourth, the ALJ must more meaningfully explain why Plaintiff's attendance at church (where he sits in the back), visits to the library, use of public transportation, walking, and occasional cooking for himself serves as evidence of high mental-health functioning. The ALJ must explain why these activities are inconsistent with Plaintiff's claim that he is unable to properly handle his

---

[67] AR 492.

[68] *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *Orn v. Astrue*, 495 F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in their proper context); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports. However, the purpose of those visits was not to assess [the claimant]'s mental health, and thus any lack of corroboration is not surprising.").

frustrations and interact appropriately with supervisors to the extent required to sustain gainful employment.[69]

Finally, the ALJ may not rely on Plaintiff's unsuccessful, brief work attempts after the ALJ's first denial as evidence that contravenes Plaintiff's mental-health symptom reports. "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience [symptoms] severe enough to preclude his from *maintaining* substantial gainful employment."[70] Rather, evidence that a claimant tried to work and failed will often support allegations of disabling symptoms.[71]

## C.    Other Steps: The ALJ must reevaluate on remand.

Plaintiff argues the ALJ erred at step three (listings) and step five (RFC). Because the ALJ's weighing of the medical evidence impacted his weighing of Plaintiff's symptom reports and the sequential analysis, the Court does not analyze Plaintiff's remaining claims.

## D.    Remand for further proceedings.

Plaintiff submits a remand for payment of benefits is warranted.

---

[69] *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

[70] *Lingenfelter*, 504 F.3d at 1038.

[71] *See id.* (citing example cases); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999).

A district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."[72] The "credit-as-true" rule, on which Plaintiff relies, is a "rare and prophylactic exception to the ordinary remand rule."[73] For the Court to remand for award of benefits, three conditions must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[74]

Here, the second and third conditions are met. The ALJ failed to provide legally sufficient reasons for discounting the medical opinions pertaining to Plaintiff's mental-health limitations and, if these opinions are credited as true, Plaintiff would be considered unable to sustain fulltime work.

However, further administrative proceedings are needed. The ALJ failed to meaningfully analyze what impact Plaintiff's substance abuse has on his mental-health limitations. On remand, the ALJ is to consider seeking clarification from the mental-health examiners and treating provider as to their opined limitations. In

---

[72] *Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017).

[73] *Id.*

[74] *Garrison*, 759 F.3d at 1020.

addition, the ALJ must obtain testimony from a psychological expert, including about:

- whether the psychological status findings in physical treatment notes are significant findings that should be relied on when assessing the claimant's mental-health symptoms and, if so, to what extent they, as compared to the psychological status findings in mental-health treatment notes and examination reports, should be considered when assessing the claimant's mental-health symptoms.

- whether Plaintiff meets or equals Listings 12.04, 12.06, and 12.08, singly or in combination.

- whether Plaintiff's mental-health symptoms are impacted by his substance use and whether, if he stopped using drugs and alcohol, his remaining mental-health limitations would be disabling.

After the subsequent hearing, the ALJ is to reconsider the medical evidence, Plaintiff's symptom reports, and reevaluate the sequential process.

To ensure Plaintiff has a fair hearing on this second remand, the Court finds it prudent to direct that the Social Security Administrative assign this matter to a different ALJ for a new determination of Plaintiff's disability status.[75]

---

[75] *See* 20 C.F.R. § 404.940; *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001).

1

## V.    Conclusion

2       Accordingly, **IT IS HEREBY ORDERED**:

3       1.       Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is

4               **GRANTED**.

5       2.       The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is

6               **DENIED**.

7       3.       The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

8               REVERSING and REMANDING the matter to the Commissioner of

9               Social Security for further proceedings **before a new ALJ** pursuant

10              to sentence four of 42 U.S.C. § 405.

11      4.       The case shall be **CLOSED**.

12      **IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and

13  provide copies to all counsel.

14      **DATED** this 11th day of May 2022.

15                                  _Edward F. Shea_

16                          _____
                                EDWARD F. SHEA
17                          Senior United States District Judge

18

19

20

21

22

23